**0IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUZANNE WALTON<br>801 Ridgewood Avenue<br>Nescopeck, PA 18635<br><br>v.<br><br>FRONTIER AIRLINES, INC.<br>c/o Corporation Service Company<br>5235 North Front Street<br>Harrisburg, PA 17105<br>and<br>FRONTIER GROUP HOLDINGS, INC.<br>4545 Airport Way<br>Denver, CO 80239<br>and<br>AIRBUS S.E. a/k/a AIRBUS SE<br>2550 Wasser Terrace, Ste. 9100<br>Herndon, VA 20171<br>and<br>AIRBUS SAS<br>c/o Airbus Americas, Inc.<br>2550 Wasser Terrace, Ste. 9100<br>Herndon, VA 20171<br>and<br>AIRBUS OPERATIONS SAS a/k/a AIRBUS OPERATIONS SASU<br>c/o Airbus Americas, Inc.<br>2550 Wasser Terrace, Ste. 9100<br>Herndon, VA 20171<br>and<br>AIRBUS AMERICAS, INC.<br>2550 Wasser Terrace, Ste. 9100<br>Herndon, VA 20171<br>and<br>AIRBUS AMERICAS CUSTOMER SERVICES, INC.<br>2550 Wasser Terrace, Ste. 9000<br>Herndon, VA 20171<br>and<br><br>(continued on next page | NO. 2:26-CV-7615 |

AIRBUS NORTH AMERICA a/k/a AIRBUS GROUP, INC.
2550 Wasser Terrace, Suite 9000
Herndon, VA 20171
and
AIRBUS ATLANTIC a/k/a AIRBUS ATLANTIC SAS
c/o Airbus Americas, Inc.
2550 Wasser Terrace, Ste. 9100
Herndon, VA 20171
and
AIRBUS U.S. A220, INC.
320 Airbus Way
Mobile, AL 36615
and
AIRBUS COMMERCIAL AIRCRAFT
2550 Wasser Terrace, Ste. 9100
Herndon, VA 20171
and
and
WILMINGTON TRUST COMPANY a/k/a d/b/a WILMINGTON TRUST CO. TRUSTEE
Rodney Square North
1100 N. Market Street
Wilmington, DE 19890
and
M&T BANK CORPORATION a/k/a d/b/a MANUFACTURERS & TRADERS TRUST COMPANY a/k/a d/b/a M&T BANK A/K/A D/B/A WILMINGTON TRUST COMPANY a/k/a d/b/a WTC a/k/a d/b/a WILMINGTON TRUST, N.A. a/k/a d/b/a WTNA a/k/a d/b/a WILMINGTON TRUST INVESTMENT ADVISORS INC. a/k/a d/b/a WTIA a/k/a d/b/a WILMINGTON FUNDS MANAGEMENT CORPORATION a/k/a d/b/a WFMC a/k/a d/b/a WILMINGTON TRUST ASSET MANAGEMENT, LLC a/k/a d/b/a WTAM a/k/a d/b/a WILMINGTON TRUST INVESTMENT MANAGEMENT, LLC a/k/a d/b/a WTIM
One M&T Plaza
Buffalo, NY 14203
and
ABC CORPORATION (1-10)

## CIVIL ACTION – COMPLAINT

## THE PARTIES

1. At all times material, Plaintiff, Suzanne Walton's principal and permanent place of residence is 801 Ridgewood Avenue, Nescopeck, PA 18635.

2. At all times material, Defendant, Frontier Airlines, Inc. was and is a foreign business corporation existing by virtue and under the laws of the State of Colorado with a registered office at Corporation Service Company, 5235 N. Front Street, Harrisburg, PA 17105.

3. At all times material, Defendant, Frontier Group Holdings, Inc., was and is a foreign business corporation existing by virtue and under the laws of the State of Colorado with a principal address 4545 Airport Way, Denver, CO 80239.

4. Hereinafter, Defendants Frontier Airlines, Inc. and Frontier Group Holdings, Inc., will collectively be referred to as "Frontier Defendants."

5. At all times material, Frontier Defendants regularly and systematically conducted business in Philadelphia, Pennsylvania, through the Philadelphia International Airport.

6. At all times material, Defendant Airbus S.E. a/k/a Airbus SE, was and is a European public limited-liability company, incorporated under the laws of The Netherlands, conducting business in the United States, with multiple locations, including 2550 Wasser Terrace, Ste. 9100, Herndon, VA 20171.

7. At all times material, Defendant, Airbus SAS, was an is a corporation or other legal entity existing under the laws of France, conducting business in the United States, amendable to service at Airbus Americas, Inc. 2550 Wasser Terrace, Ste. 9100, Herndon, VA 20171.

8. At all times material, Defendant, Airbus Operations SAS a/k/a Airbus Operations SASU, was and is a corporation or other legal entity existing under the laws of France, conducting business in the United States, amendable to service at Airbus Americas, Inc. 2550 Wasser Terrace, Ste. 9100, Herndon, VA 20171.

9. At all times material, Defendant, Airbus Americas, Inc., was and is a foreign profit corporation, existing by virtue and under the laws of the State of Florida, with a corporate office located at 2550 Wasser Terrace, Ste. 9100, Herndon, VA 20171.

10. At all times material, Defendant, Airbus Americas Customer Services, Inc., was and is a corporation existing by virtue and under the laws of the State of Delaware, with a corporate office located at 2550 Wasser Terrace, Ste. 9100, Herndon, VA 20171.

11. At all times material, Defendant, Airbus North America a/k/a Airbus Group, Inc., was and is a corporation or other legal entity conducting significant business within the United States of America with a corporate office at 2550 Wasser Terrace, Ste. 9000, Herndon, VA 20171.

12. At all times material, Defendant, Airbus Atlantic a/k/a Airbus Atlantic SAS, was and is a corporation or other legal entity existing under the laws of France, conducting business in the United States, amendable to service at Airbus Americas, Inc. 2550 Wasser Terrace, Ste. 9100, Herndon, VA 20171.

13. At all times material, Defendant, Airbus U.S. A220, Inc., was and is a foreign corporation existing by virtue and under the laws of the State of Delaware, with a principal address at 320 Airbus Way, Mobile, AL 36615.

14. At all times material, Defendant Airbus Commercial Aircraft, was and is a foreign corporation or other legal entity conducting significant business within the United States of America with a corporate office at 2550 Wasser Terrace, Ste. 9100, Herndon, VA 20171.

15. Hereinafter, Defendants, Airbus S.E. a/k/a Airbus SE, Airbus SAS, Airbus Operations SAS, Airbus Americas, Inc., Airbus Americas Customer Services, Inc., Airbus North America a/k/a Airbus Group, Inc., Airbus Atlantic a/k/a Airbus Atlantic SAS, Airbus U.S. A220, Inc., and Airbus Commercial Aircraft, shall be collectively referred to as "Airbus Defendants."

16. At all times material, Airbus Defendants regularly and systematically conducted significant and constant business within the Eastern District of Pennsylvania through the production, shipment, and delivery of commercial airplanes to various airline carriers and commercial customers, including Frontier Defendants.

17. At all times material, Defendant, Wilmington Trust Company a/k/a d/b/a Wilmington Trust Co. Trustee, was and is a foreign business corporation existing by virtue and under the laws of the State of Delaware, with a principal address at 1100 N. Market Street, Wilmington, DE 19890.

18. At all times material, Defendant, M&T Bank Corporation a/k/a d/b/a Manufacturers & Traders Trust Company a/k/a d/b/a M&T Bank a/k/a d/b/a Wilmington Trust Company a/k/a d/b/a WTC a/k/a d/b/a Wilmington Trust, N.A. a/k/a d/b/a WTNA a/k/a d/b/a Wilmington Trust Investment Advisors Inc. a/k/a d/b/a WTIA a/k/a d/b/a Wilmington Funds Management Corporation a/k/a d/b/a WFMC a/k/a d/b/a Wilmington Trust Asset Management, LLC a/k/a d/b/a WTAM a/k/a d/b/a Wilmington Trust Investment Management, LLC a/k/a d/b/a WTIM,

was and is a foreign business corporation, existing by virtue and under the laws of the State of New York, with a corporate headquarters at One M&T Plaza, Buffalo, NY 14203.

19. Hereinafter, Defendants, Wilmington Trust Company a/k/a d/b/a Wilmington Trust Co. Trustee and M&T Bank Corporation a/k/a d/b/a Manufacturers & Traders Trust Company a/k/a d/b/a M&T Bank a/k/a d/b/a Wilmington Trust Company a/k/a d/b/a WTC a/k/a d/b/a Wilmington Trust, N.A. a/k/a d/b/a WTNA a/k/a d/b/a Wilmington Trust Investment Advisors Inc. a/k/a d/b/a WTIA a/k/a d/b/a Wilmington Funds Management Corporation a/k/a d/b/a WFMC a/k/a d/b/a Wilmington Trust Asset Management, LLC a/k/a d/b/a WTAM a/k/a d/b/a Wilmington Trust Investment Management, LLC a/k/a d/b/a WTIM, shall be collectively referred to as "Owner Defendants."

20. At all times material hereto, Owner Defendants regularly and systematically conducted significant and constant business within the Eastern District of Pennsylvania through the ownership, leasing, loaning, controlling, and operation of commercial airplanes to various airline carriers and commercial customers, including Frontier Defendants.

21. At all times material, Defendants ABC Corporation 1-10, are fictitious names for unknown business entities alleged and therefore averred to have ownership and/or controlling interest(s), and/or responsibility to design and/or inspect and/or maintain the airplane involved in the incident referenced in this Complaint.

**JURISDICTION AND VENUE**

22. Based upon information and belief, there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 29 U.S.C. § 1332.

23. Additionally, should the Montreal Convention apply, this action arises under the Montreal Convention. Pursuant to Article 17 of the Montreal Convention, a carrier is liable for damages sustained in case of death or bodily injury of a passenger upon condition only that the incident which caused the death or injury took place on board the aircraft or in the course of embarking or disembarking.

24. Pursuant to Article 33 of the Montreal Convention, jurisdiction is proper in the Eastern District of Pennsylvania because, at the time of the incident on October 4, 2024, and Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 operated commercial air services for the carriage of passengers to and from the United States, including Philadelphia International Airport in Pennsylvania.

**FACTUAL BACKGROUND**

25. At all times material, Frontier Defendants and/or Airbus Defendants and/or Owner Defendants and/or ABC Corporation 1-10, jointly and/or severally, were the owners, operators, and/or entities in control of, based upon information and belief, a Frontier Airlines, 2017 Airbus A321-211, Serial Number 7852, Tail Number N720FR, operated by workmen, agents, and/or employees of Frontier Defendants, on October 4, 2024, for a flight departing Philadelphia International Airport at approximately 10:41 am for Tampa International Airport.

26. At all times material, Owner Defendants, jointly and/or severally, through themselves or subsidiaries, was the registered owner of the 2017 Airbus A321-211, Serial Number 7852, Tail Number N720FR. See https://registry.faa.gov reproduced, in part, below.

United States Department of Transportation | About DOT | Our Activities | Areas of Focus

FAA Aircraft Inquiry Search Contact

Lookup Aircraft By... ▾ N-Numbers ▾ Other Aircraft Resources ▾

## FAA REGISTRY

**N-Number Inquiry Results**

Data Updated Each Federal Working Day At Midnight

N720FR is Assigned

| N-NUMBER ENTERED: 720FR | | | |
|---|---|---|---|
| **AIRCRAFT DESCRIPTION** | | | |
| Serial Number | 7852 | Status | Valid |
| Manufacturer Name | AIRBUS | Certificate Issue Date | 07/25/2024 |
| Model | A321-211 | Expiration Date | 07/31/2031 |
| Type Aircraft | Fixed Wing Multi-Engine | Type Engine | Turbo-fan |
| Pending Number Change | None | Dealer | No |
| Date Change Authorized | None | Mode S Code (base 8 / Oct) | 52322031 |
| MFR Year | 2017 | Mode S Code (Base 16 / Hex) | A9A419 |
| Type Registration | Corporation | Fractional Owner | NO |

| REGISTERED OWNER | | | |
|---|---|---|---|
| Name | WILMINGTON TRUST CO TRUSTEE | | |
| Street | RODNEY SQUARE NORTH | | |
| | 1100 N MARKET ST | | |
| City | WILMINGTON | State | DELAWARE |
| County | NEW CASTLE | Zip Code | 19890-1100 |
| Country | UNITED STATES | | |

27. On October 4, 2024, Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 were commercial air carriers and/or suppliers in the business of transporting fare-paying passengers on regularly scheduled international and domestic flights in aircraft(s) owned, leased, operated, managed, maintained, and/or controlled by Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 and their agents, representatives and/or employees.

28. At all times material, Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 were commercial air carriers and/or suppliers were common carriers of passengers and were required to exercise the highest degree of care to keep their passengers safe during transport.

29. At all times material, Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 were commercial air carriers and/or suppliers, were manufacturers of airplanes, including the airplane described above, used by common carriers to transport passengers using the highest degree of care to keep passengers safe during transport.

30. Airbus Defendants boasts about its focus on safety

> [n]othing is more important than ensuring a safe flight for everyone – and everything – that flies aboard an Airbus aircraft. We strive to meet the highest safety levels for all our aircraft and products, and our dedication to safety is reflected across the company, from design, engineering and production to maintenance, training and support.
>
> See www.airbus.com/en/safety.

31. Frontier Defendants operate on a commitment to "Low Fares Done Right." See www.flyfrontier.com/about-us.

32. Frontier Defendants also boasts that the use of A320 and A320neo family of aircrafts, "with Frontier's high-density seating configuration and weight-saving initiatives" make Frontier Defendants the most fuel-efficient of all major U.S. Carriers. See https://ir.flyfrontier.com.

33. The Federal Aviation Administration has approved Airbus Model A321-211 has a maximum passenger seating capacity of 230, with appropriate modifications.

34. Frontier lists two Airbus A321 airplanes in their fleet, either with 230 seats or 240 seats available. See www.flyfrontier.com/about-us/aircraft-configuration, reproduced in part below.


FRONTIER
AIRBUS A321 (230 seats)
UPFRONT PLUS Seating
Rows 1-2
PREMIUM Seating
Rows 3, 13, 27
PREFERRED Seating
Rows 4-10
STANDARD Seating
All other rows
EXIT ROW Premium Seating
Rows 13, 27
EXIT ROW Standard Seating
Rows 10D-E, 26B-C
We do not offer seatbelt extensions for Row 1.
Infants cannot be seated in Row 1.
Exit Door
LAV Lavatory


FRONTIER
AIRBUS A321 (240 seats)
UPFRONT PLUS Seating
Rows 1-2
PREMIUM Seating
Rows 3, 18, 19, 29, 30A
PREFERRED Seating
Rows 4-17
STANDARD Seating
All other rows
EXIT ROW Premium Seating
Rows 18-19, 29, 30A
EXIT ROW Standard Seating
Row 30B-C
We do not offer seatbelt extensions for Row 1.
Infants cannot be seated in Row 1.
Exit Door
LAV Lavatory

35. Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 were aware, or should have been aware, that high-density seating configurations could and would make the plan unsafe for passengers moving to and from their assigned seats.

36. Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 were aware, or should have been aware, that high-density seating configurations could and would lead to the creation of tripping hazards in pathways designed for passengers to move to and from their assigned seats.

37. Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 were aware, or should have been aware, that high-density seating configurations would create smaller walking areas for passengers moving to and from their assigned seats, making it difficult, if not impossible, to observe and/or traverse tripping hazards in the area where passengers move to and from their assigned seats.

38. Based on the above, Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10 should have ensured that all tripping hazards were clearly visible and identifiable, warned passengers of the potential of tripping hazards in walkways as a direct result of high-density seating configurations, and/or offered assistance to passengers to ensure that such hazards did not result in injuries.

39. Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10's decision to create high-density seating configurations was a direct result of attempting to become more fuel efficient, and therefore, more profitable to their shareholders, at the expense of lawful, fare paying passengers seeking "Low Fares Done Right."

40. Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Corporation 1-10's implementation of seating configurations to put profits over people was negligent, reckless, willful, wanton, grossly negligent, careless and/or negligent.

**THE INCIDENT**

41. On October 4, 2024, Ms. Walton was a paying passenger on a Frontier Airlines flight departing Philadelphia International Airport at approximately 10:41 am for Tampa International Airport.

42. Based upon information a belief, the Frontier Airlines, 2017 Airbus A321-211, Serial Number 7852, Tail Number N720FR, (hereinafter identified as "aircraft") was used for this trip.

43. The flight boarded at Gate E4.

44. Ms. Walton's assigned seat by Frontier Defendants and/or ABC Company 1-10 for this flight was 37A, a three seat row, with the "A" seat closest to the window.

45. At no time was Ms. Walton offered any assistance to her seat.

46. At no time was Ms. Walton warned, advised, or notified in any manner as to the existence of an obstruction in the walkway of row 37ABC.

47. As Ms. Walton was boarding the aircraft in row 37ABC toward her seat, she was caused to encounter an unmarked hazard on the ground, in the walkway of her row, causing her left foot to be trapped while her left leg shifted from right to left.

48. Ms. Walton was in immediate pain at the tibial plateau of her left leg.

49. She applied ice to her left leg, but was unable to elevate it for the approximately two hours flight, due to the "high density seating configuration" of the aircraft.

50. As a result of the incident, Ms. Walton sustained severe, permanent, and life altering injuries including acute fracture of the lateral tibial plateau extending deep to the tibial intercondylar eminence to the central medial tibial plateau, shock and injury to her nerves, muscular and bones systems all of which claims may be permanent or cause a serious and permanent impairment of bodily function and emotional and mental distress and may continue to suffer same.

**COUNT I - NEGLIGENCE**

51. Plaintiff incorporates by reference all preceding paragraphs above as if fully set forth herein.

52. On October 4, 2024, as a result of the negligence of Frontier Defendants, Airbus Defendants, Owner Defendant, and ABC Company 1-10 and through no fault of her own, Ms. Walton sustained serious bodily injury while in the court of boarding the subject domestic flight.

53. Ms. Walton's injuries were due to the negligence or other wrongful act or omission of Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company 1-10, and their servants, employees, representatives, and/or agents, and her injuries were not solely due to the negligence or wrongful act or omission of a third party.

54. The negligence and misconduct of Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company 1-10 includes, but is not limited to the following:

(a) Failing to maintain the aircraft in a safe condition;

(b) Failing to properly inspect the aircraft;

(c) Failing to investigate prior reported issues of tripping hazards in walkways;

(d) Failing to correct a systematic failure to make remedy and/or alterations;

(e) Permitting the aircraft to travel and transport passengers on the date of incident despite the dangerous condition of the aircraft;

(f) Disregarding documented issues of the aircraft and allowing it to continue transporting passengers;

(g) Disregarding continued warnings of dangerous conditions of the aircraft, resulting in a foreseeable hazard that could cause serious and permanent injuries;

(h) Failing to maintain, inspect and repair the aircraft in a safe fashion to prevent tripping hazards and obstructions in walkways and keep passengers safe;

(i) Failing to heed warnings and notice of dangerous conditions of the aircraft prior to the crash;

(j) Ignoring and/or not following FAA guidelines and recommendations regarding seating capacity and safe walkway dimensions;

(k) Failing to establish and/or follow appropriate policies and procedures related to the safety of aircrafts;

(l) Failing to establish and/or follow appropriate policies and procedures related to boarding aircrafts and tripping hazards and obstructions in walkways aboard the aircraft;

(m) Failing to have the appropriate, correct, or lawful amount of flight attendants to assist passengers embarking and/or boarding the aircraft;

(n) Violating FAA regulations;

(o) Putting profits over the safety of its passengers;

(p) Failing to formulate, adopt and enforce adequate rules, policies and procedures with respect to the appropriate lawful and safe manner of embarking and/or boarding aircrafts;

(q) Failing to oversee and/or supervise employees, servants and/or agents;

(r) Failing to train its employees;

(s) Failing to properly and regularly monitor employees, servants and/or agents;

(t) Hiring and/or allowing employees, servants and/or agents to be responsible for passenger safety despite lacking training and/or the qualifications to do so, or a history of failing to emphasize passenger safety;

(u) Failing to protect passengers from hazards bolted to the floor in walking paths;

(v) Failing to provide warnings, assistance, or additional safety measures in light of the "high density seating configuration";

(w) Failing to take reasonable precautions to ensure safe boarding under known hazardous conditions;

(x) failing to maintain the walking surface in a manner safe for those lawfully upon it;

(y) failing to properly supervise, train, and instruct its agents, servants, workmen and employees;

(z) allowing said dangerous condition to exist on said area creating a dangerous condition which was a threat to persons lawfully using said walking surface;

(aa) failing to warn Plaintiff of said dangerous condition of which Defendants knew or could and should have known in time to have remedied same;

(bb) failing to barricade said dangerous condition;

(cc) failing to anticipate the hazard to which the Plaintiff was exposed;

(dd) failing to inspect said area;

(ee) failing to timely make the area safe;

(ff) creating a dangerous condition;

(gg) Failing to maintain the aircraft and its parts in a safe condition;

(hh) Failing to inspect the aircraft and its parts in a safe condition;

(ii) Failing to identify safety issues with the aircraft and its parts;

(jj) Designing, manufacturing, distributing, and/or selling a defective and unreasonably dangerous aircraft;

(kk) Designing, manufacturing, distribution and/or selling a aircraft with unreasonably dangerous seating configuration;

(ll) Designing, manufacturing, distributing and/or selling a defective and unreasonably dangerous aircraft which lack necessary elements to make it safe;

(mm) Failing to incorporate a safer design and/or use other elements to minimize the risk of injury;

(nn) Failing to properly inspect or test the aircraft and its parts to identify and correct any defective or unreasonably dangerous conditions discovered;

(oo) Failing to warn users and consumers about the defective and/or unreasonably dangerous condition;

(pp) Designing, manufacturing, and/or selling a aircraft and its parts that lacked necessary safeguards;

(qq) Defectively designing the aircraft, including seating design and/or configuration, and its parts with adequate safety measures which would prevent incidents, such as the incident described herein;

(rr) Failing to act as a reasonable seller, designer, manufacturer and/pr distributor of aircrafts; and,

(ss) Failing to ensure Ms. Walton received medical clearance to fly after the injury.

55. As a direct and proximate result of the foregoing and the bodily injuries sustained by Ms. Walton in the incident described above, she suffered and claims damages for serious physical harm including, but not limited to, acute fracture of the lateral tibial plateau extending deep to the tibial intercondylar eminence to the central medial tibial plateau and related physical injuries, together with pain and suffering, embarrassment and humiliation, disability, disfigurement, mental anguish, loss of enjoyment of life, and medical expenses.

56. These injuries and losses are permanent in nature and Ms. Walton will continue to suffer damages in the future.

WHEREFORE, Plaintiff, Suzanne Walton, demands judgment against Defendants, Frontier Airlines, Inc., Frontier Group Holdings, Inc., Airbus S.E. a/k/a Airbus SE, Airbus SAS, Airbus Operations SAS, Airbus Americas, Inc., Airbus Americas Customer Services, Inc., Airbus North America a/k/a Airbus Group, Inc., Airbus Atlantic a/k/a Airbus Atlantic SAS, Airbus U.S. A220, Inc., Airbus Commercial Aircraft, Wilmington Trust Company a/k/a d/b/a Wilmington Trust Co. Trustee, M&T Bank Corporation a/k/a d/b/a Manufacturers & Traders Trust Company a/k/a d/b/a M&T Bank a/k/a d/b/a Wilmington Trust Company a/k/a d/b/a WTC a/k/a d/b/a Wilmington Trust, N.A. a/k/a d/b/a WTNA a/k/a d/b/a Wilmington Trust Investment Advisors Inc. a/k/a d/b/a WTIA a/k/a d/b/a Wilmington Funds Management

Corporation a/k/a d/b/a WFMC a/k/a d/b/a Wilmington Trust Asset Management, LLC a/k/a d/b/a WTAM a/k/a d/b/a Wilmington Trust Investment Management, LLC a/k/a d/b/a WTIM, and ABC Company 1-10, for compensatory damages, reasonable attorneys' fees, costs, and such other relief as this Court deems appropriate.

**COUNT II – CLAIM FOR DAMAGES UNDER THE MONTREAL CONVENTION**

57. Plaintiff incorporates by reference all preceding paragraphs above as if fully set forth herein.

58. At the time of Ms. Walton's injury on October 4, 2024, the Montreal Convention, which governs international carriage by air, was in full force and effect.

59. At the time of her injury, Ms. Walton was engaged in a domestic flight, followed by a cruise trip into international waters.

60. Therefore, this Court may find that the Montreal Convention applies, under the definition of international carriage as defined by Article 1(2).

61. Pursuant to Article 41(1) of the Montreal Convention, actions and omissions of an airline actually operating the flight, including those of its employees and agents acting within their employments, are legally attributed to the airline that contracted to provide the transportation.

62. Pursuant to Articles 17 and 39-41 of the Montreal Convention, Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company 1-10 are liable for damage sustained in case of bodily injury of a passenger upon condition only that the incident which caused the injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

63. The events described herein constitute an incident/accident within the meaning of the Montreal Convention.

64. On October 4, 2024, as a result of the negligence of Frontier Defendants, Airbus Defendants, Owner Defendant, and ABC Company 1-10 and through no fault of her own, Ms. Walton sustained serious bodily injury while in the court of boarding the subject domestic flight.

65. Ms. Walton's injuries were due to the negligence or other wrongful act or omission of Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company 1-10, and their servants, employees, representatives, and/or agents, and her injuries were not solely due to the negligence or wrongful act or omission of a third party.

66. The negligence and misconduct of Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company 1-10 includes, but is not limited to the following:

(a) Failing to maintain the aircraft in a safe condition;

(b) Failing to properly inspect the aircraft;

(c) Failing to investigate prior reported issues of tripping hazards in walkways;

(d) Failing to correct a systematic failure to make remedy and/or alterations;

(e) Permitting the aircraft to travel and transport passengers on the date of incident despite the dangerous condition of the aircraft;

(f) Disregarding documented issues of the aircraft and allowing it to continue transporting passengers;

(g) Disregarding continued warnings of dangerous conditions of the aircraft, resulting in a foreseeable hazard that could cause serious and permanent injuries;

(h) Failing to maintain, inspect and repair the aircraft in a safe fashion to prevent tripping hazards and obstructions in walkways and keep passengers safe;

(i) Failing to heed warnings and notice of dangerous conditions of the aircraft prior to the crash;

(j) Ignoring and/or not following FAA guidelines and recommendations regarding seating capacity and safe walkway dimensions;

(k) Failing to establish and/or follow appropriate policies and procedures related to the safety of aircrafts;

(l) Failing to establish and/or follow appropriate policies and procedures related to boarding aircrafts and tripping hazards and obstructions in walkways aboard the aircraft;

(m) Failing to have the appropriate, correct, or lawful amount of flight attendants to assist passengers embarking and/or boarding the aircraft;

(n) Violating FAA regulations;

(o) Putting profits over the safety of its passengers;

(p) Failing to formulate, adopt and enforce adequate rules, policies and procedures with respect to the appropriate lawful and safe manner of embarking and/or boarding aircrafts;

(q) Failing to oversee and/or supervise employees, servants and/or agents;

(r) Failing to train its employees;

(s) Failing to properly and regularly monitor employees, servants and/or agents;

(t) Hiring and/or allowing employees, servants and/or agents to be responsible for passenger safety despite lacking training and/or the qualifications to do so, or a history of failing to emphasize passenger safety;

(u) Failing to protect passengers from hazards bolted to the floor in walking paths;

(v) Failing to provide warnings, assistance, or additional safety measures in light of the "high density seating configuration";

(w) Failing to take reasonable precautions to ensure safe boarding under known hazardous conditions;

(x) failing to maintain the walking surface in a manner safe for those lawfully upon it;

(y) failing to properly supervise, train, and instruct its agents, servants, workmen and employees;

(z) allowing said dangerous condition to exist on said area creating a dangerous condition which was a threat to persons lawfully using said walking surface;

(aa) failing to warn Plaintiff of said dangerous condition of which Defendants knew or could and should have known in time to have remedied same;

(bb) failing to barricade said dangerous condition;

(cc) failing to anticipate the hazard to which the Plaintiff was exposed;

(dd) failing to inspect said area;

(ee) failing to timely make the area safe;

(ff) creating a dangerous condition;

(gg) Failing to maintain the aircraft and its parts in a safe condition;

(hh) Failing to inspect the aircraft and its parts in a safe condition;

(ii) Failing to identify safety issues with the aircraft and its parts;

(jj) Designing, manufacturing, distributing, and/or selling a defective and unreasonably dangerous aircraft;

(kk) Designing, manufacturing, distribution and/or selling a aircraft with unreasonably dangerous seating configuration;

(ll) Designing, manufacturing, distributing and/or selling a defective and unreasonably dangerous aircraft which lack necessary elements to make it safe;

(mm) Failing to incorporate a safer design and/or use other elements to minimize the risk of injury;

(nn) Failing to properly inspect or test the aircraft and its parts to identify and correct any defective or unreasonably dangerous conditions discovered;

(oo) Failing to warn users and consumers about the defective and/or unreasonably dangerous condition;

(pp) Designing, manufacturing, and/or selling a aircraft and its parts that lacked necessary safeguards;

(qq) Defectively designing the aircraft, including seating design and/or configuration, and its parts with adequate safety measures which would prevent incidents, such as the incident described herein;

(rr) Failing to act as a reasonable seller, designer, manufacturer and/pr distributor of aircrafts; and,

(ss) Failing to ensure Ms. Walton received medical clearance to fly after the injury.

67. As a direct and proximate result of the foregoing and the bodily injuries sustained by Ms. Walton in the incident described above, she suffered and claims damages for serious

physical harm including, but not limited to, acute fracture of the lateral tibial plateau extending deep to the tibial intercondylar eminence to the central medial tibial plateau and related physical injuries, together with pain and suffering, embarrassment and humiliation, disability, disfigurement, mental anguish, loss of enjoyment of life, and medical expenses.

68. These injuries and losses are permanent in nature and Ms. Walton will continue to suffer damages in the future.

WHEREFORE, Plaintiff, Suzanne Walton, demands judgment against Defendants, Frontier Airlines, Inc., Frontier Group Holdings, Inc., Airbus S.E. a/k/a Airbus SE, Airbus SAS, Airbus Operations SAS, Airbus Americas, Inc., Airbus Americas Customer Services, Inc., Airbus North America a/k/a Airbus Group, Inc., Airbus Atlantic a/k/a Airbus Atlantic SAS, Airbus U.S. A220, Inc., Airbus Commercial Aircraft, Wilmington Trust Company a/k/a d/b/a Wilmington Trust Co. Trustee, M&T Bank Corporation a/k/a d/b/a Manufacturers & Traders Trust Company a/k/a d/b/a M&T Bank a/k/a d/b/a Wilmington Trust Company a/k/a d/b/a WTC a/k/a d/b/a Wilmington Trust, N.A. a/k/a d/b/a WTNA a/k/a d/b/a Wilmington Trust Investment Advisors Inc. a/k/a d/b/a WTIA a/k/a d/b/a Wilmington Funds Management Corporation a/k/a d/b/a WFMC a/k/a d/b/a Wilmington Trust Asset Management, LLC a/k/a d/b/a WTAM a/k/a d/b/a Wilmington Trust Investment Management, LLC a/k/a d/b/a WTIM, and ABC Company 1-10, for compensatory damages, reasonable attorneys’ fees, costs, and such other relief as this Court deems appropriate.

## COUNT III – STRICT LIABILITY

69. Plaintiff incorporates by reference all preceding paragraphs above as if fully set forth herein.

70. Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company 1-10 placed the aircraft described above, and its parts, in the stream of commerce in a defective and unreasonably dangerous condition by reason of its design, manufacture, absence of safety features, warnings, notice, and instruction to end users and customers.

71. The aircraft was unsafe, defective and in an unreasonably dangerous condition, for reasons including, but not limited to the following:

(a) Failing to distribute, supply and/or sell the aircraft in a manner so as to render it safe for its intended use;

(b) Failing to include in the design and/or manufacture of the aircraft sufficient safeguards or safety features to avoid the incident described above;

(c) Failing to warn users of the defective and/or hazardous condition(s) of which Defendants were or should have been aware;

(d) Failing to correct, remedy, repair, and/or eliminate the defective and/or hazardous condition(s) when Defendants were or should have been aware;

(e) Failing to provide sufficient warnings as to the defects or hazards in the aircraft and of the dangers those defects or hazards posed to passengers;

(f) Failing to distribute, sell, and/or supply the aircraft in a manner so as to render it safe for its intended and ordinary purpose;

(g) Failing to communicate warnings concerning reasonable foreseeable used of the aircraft and foreseeable misuses;

(h) Designing, manufacturing, and distributing and supplying and/or selling a defective and unreasonably dangerous aircraft;

(i) Failing to incorporate an alternative and safer design to minimize the risk of failure and/or injury during embarking/boarding; and,

(j) Failing to properly inspect or test the aircraft, including the seating design and configuration, in order to identify and correct any defective or unreasonably dangerous conditions discovered.

72. The defective and unreasonably dangerous conditions of the aircraft and seating configuration and design and/or its parts was/were a factual, legal and proximate cause of Ms. Walton's injuries and damages.

73. Therefore, Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company 1-10 are strictly liable for Ms. Walton's injuries and damages pursuant to Section 402A of the Restatement (Second) of Torts.

WHEREFORE, Plaintiff, Suzanne Walton, demands judgment against Defendants, Frontier Airlines, Inc., Frontier Group Holdings, Inc., Airbus S.E. a/k/a Airbus SE, Airbus SAS, Airbus Operations SAS, Airbus Americas, Inc., Airbus Americas Customer Services, Inc., Airbus North America a/k/a Airbus Group, Inc., Airbus Atlantic a/k/a Airbus Atlantic SAS, Airbus U.S. A220, Inc., Airbus Commercial Aircraft, Wilmington Trust Company a/k/a d/b/a Wilmington Trust Co. Trustee, M&T Bank Corporation a/k/a d/b/a Manufacturers & Traders Trust Company a/k/a d/b/a M&T Bank a/k/a d/b/a Wilmington Trust Company a/k/a d/b/a WTC a/k/a d/b/a Wilmington Trust, N.A. a/k/a d/b/a WTNA a/k/a d/b/a Wilmington Trust Investment Advisors Inc. a/k/a d/b/a WTIA a/k/a d/b/a Wilmington Funds Management Corporation a/k/a d/b/a WFMC a/k/a d/b/a Wilmington Trust Asset Management, LLC a/k/a

d/b/a WTAM a/k/a d/b/a Wilmington Trust Investment Management, LLC a/k/a d/b/a WTIM, and ABC Company 1-10, for compensatory damages, reasonable attorneys' fees, costs, and such other relief as this Court deems appropriate.

**COUNT IV – BREACH OF WARRANTY**

74. Plaintiff incorporates by reference all preceding paragraphs above as if fully set forth herein.

75. At the time Frontier Defendants, Airbus Defendants Owner Defendants, and ABC Company 1-10 distributed, supplied and/or sold the aircraft at issue, Defendants were in the business of manufacturing, marketing, distributing and/or selling the aircraft and was, with respect to this aircraft, "merchant[s]" within the meaning of Article II of the Pennsylvania Uniform Commercial Code.

76. Ms. Walton's injuries and damages were caused by a breach of the implied warranty of merchantability extended to Ms. Walton by Defendants in connection with the sale of the aircraft.

WHEREFORE, Plaintiff, Suzanne Walton, demands judgment against Defendants, Frontier Airlines, Inc., Frontier Group Holdings, Inc., Airbus S.E. a/k/a Airbus SE, Airbus SAS, Airbus Operations SAS, Airbus Americas, Inc., Airbus Americas Customer Services, Inc., Airbus North America a/k/a Airbus Group, Inc., Airbus Atlantic a/k/a Airbus Atlantic SAS, Airbus U.S. A220, Inc., Airbus Commercial Aircraft, Wilmington Trust Company a/k/a d/b/a Wilmington Trust Co. Trustee, and M&T Bank Corporation a/k/a d/b/a Manufacturers & Traders Trust Company a/k/a d/b/a M&T Bank a/k/a d/b/a Wilmington Trust Company a/k/a d/b/a WTC a/k/a d/b/a Wilmington Trust, N.A. a/k/a d/b/a WTNA a/k/a d/b/a Wilmington Trust Investment Advisors Inc. a/k/a d/b/a WTIA a/k/a d/b/a Wilmington Funds Management

Corporation a/k/a d/b/a WFMC a/k/a d/b/a Wilmington Trust Asset Management, LLC a/k/a d/b/a WTAM a/k/a d/b/a Wilmington Trust Investment Management, LLC a/k/a d/b/a WTIM, and ABC Company 1-10, for compensatory damages, reasonable attorneys' fees, costs, and such other relief as this Court deems appropriate.

**COUNT V – NGELIGENCE BY WAY OF RES IPSA LOQUITUR**

77. Plaintiff incorporates by reference all preceding paragraphs above as if fully set forth herein.

78. The injury sustained by Ms. Walton does not and could not ordinarily occur absent the negligence of Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company (1-10) as described above.

79. At all times material, the aircraft, including its design, maintenance and inspection, including its parts, seats, and seating configuration, was in the exclusive control of Frontier Defendants, Airbus Defendants, Owner Defendants, and ABC Company (1-10).

80. Ms. Walton in no way contributed or voluntarily acted in any manner as to cause the injury and damages complained.

WHEREFORE, Plaintiff, Suzanne Walton, demands judgment against Defendants, Frontier Airlines, Inc., Frontier Group Holdings, Inc., Airbus S.E. a/k/a Airbus SE, Airbus SAS, Airbus Operations SAS, Airbus Americas, Inc., Airbus Americas Customer Services, Inc., Airbus North America a/k/a Airbus Group, Inc., Airbus Atlantic a/k/a Airbus Atlantic SAS, Airbus U.S. A220, Inc., Airbus Commercial Aircraft, Wilmington Trust Company a/k/a d/b/a Wilmington Trust Co. Trustee, and M&T Bank Corporation a/k/a d/b/a Manufacturers & Traders Trust Company a/k/a d/b/a M&T Bank a/k/a d/b/a Wilmington Trust Company a/k/a d/b/a WTC a/k/a d/b/a Wilmington Trust, N.A. a/k/a d/b/a WTNA a/k/a d/b/a Wilmington

Trust Investment Advisors Inc. a/k/a d/b/a WTIA a/k/a d/b/a Wilmington Funds Management Corporation a/k/a d/b/a WFMC a/k/a d/b/a Wilmington Trust Asset Management, LLC a/k/a d/b/a WTAM a/k/a d/b/a Wilmington Trust Investment Management, LLC a/k/a d/b/a WTIM, and ABC Company 1-10, for compensatory damages, reasonable attorneys' fees, costs, and such other relief as this Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Suzanne Walton, demands judgment against Defendants, Frontier Airlines, Inc., Frontier Group Holdings, Inc., Airbus S.E. a/k/a Airbus SE, Airbus SAS, Airbus Operations SAS, Airbus Americas, Inc., Airbus Americas Customer Services, Inc., Airbus North America a/k/a Airbus Group, Inc., Airbus Atlantic a/k/a Airbus Atlantic SAS, Airbus U.S. A220, Inc., Airbus Commercial Aircraft, Wilmington Trust Company a/k/a d/b/a Wilmington Trust Co. Trustee, and M&T Bank Corporation a/k/a d/b/a Manufacturers & Traders Trust Company a/k/a d/b/a M&T Bank a/k/a d/b/a Wilmington Trust Company a/k/a d/b/a WTC a/k/a d/b/a Wilmington Trust, N.A. a/k/a d/b/a WTNA a/k/a d/b/a Wilmington Trust Investment Advisors Inc. a/k/a d/b/a WTIA a/k/a d/b/a Wilmington Funds Management Corporation a/k/a d/b/a WFMC a/k/a d/b/a Wilmington Trust Asset Management, LLC a/k/a d/b/a WTAM a/k/a d/b/a Wilmington Trust Investment Management, LLC a/k/a d/b/a WTIM, and ABC Company 1-10 jointly and/or severally in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial jury on all issues so triable.

**GROEN STROKOFF O'NEILL, LLC**

BY: ______________________________

MAX I. GOLDBERG, ESQ.
ID No.: 322532
GROEN STROKOFF O'NEILL
125 E. Elm Street, Suite 200
Conshohocken, PA 19428
Phone: (215) 297-6156
Fax: (215) 297-6156
Email: Max@GSOlawyers.com
*Attorney for Plaintiff*

Date: October 2, 2026